**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SLAYBACK PHARMA LLC, APOTEX INC., and APOTEX CORP.,<br><br>Defendants. | C.A. No. _____ |

## <u>COMPLAINT</u>

Plaintiff Eagle Pharmaceuticals, Inc. ("Eagle"), by its attorneys, for its Complaint, alleges as follows:

1.       This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, and for a declaratory judgment of patent infringement under 28 U.S.C. §§ 2201 and 2202 and the patent laws of the United States, Title 35, United States Code, that arises out of the submission of New Drug Application ("NDA") No. 212209 by Slayback Pharma LLC ("Slayback") and NDA No. 215033 by Apotex Inc. and Apotex Corp. (collectively, "Apotex") to the United States Food and Drug Administration ("FDA").   Both NDAs seek approval to manufacture and sell proposed products that rely on data from bioavailability and/or bioequivalence studies contained in the approved labeling for Eagle's BELRAPZO®, 100 mg/4 mL (25 mg/mL) Bendamustine Hydrochloride Injection product, prior to the expiration of Eagle's U.S. Patent No. 11,103,483 ("the '483 patent" or "the Patent-in-Suit").

## PARTIES

2.      Plaintiff Eagle is a corporation organized and existing under the laws of Delaware, with its corporate offices and principal place of business at 50 Tice Boulevard, Suite 315, Woodcliff Lake, New Jersey 07677.

3.      On information and belief, Defendant Slayback Pharma LLC is a company organized and existing under the laws of Delaware, with its principal place of business at 301 Carnegie Center, #303, Princeton, New Jersey 08540.

4.      On information and belief, Defendant Apotex Inc. is a Canadian corporation with its principal place of business at 150 Signet Drive, Toronto, Ontario, Canada M9L 1T9.  Upon information and belief, Apotex Inc. is a generic pharmaceutical company that develops, manufactures, markets, and distributes generic versions of branded pharmaceutical products throughout the United States in concert with its subsidiary, Apotex Corp.

5.      On information and belief, Defendant Apotex Corp. is a Delaware corporation with its principal place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.  On information and belief, Apotex Corp. is a generic pharmaceutical company that develops, manufactures, markets, and distributes generic versions of branded pharmaceutical products throughout the United States.

6.      On information and belief, Apotex Corp. is a wholly owned subsidiary of Apotex Inc.

7.      On information and belief, and consistent with their practice with respect to other drug products, Apotex Inc. and Apotex Corp. acted in concert to prepare and submit NDA No. 215033 to FDA.  Indeed, in a notice letter provided to Eagle, those entities advised that "Apotex Inc. and Apotex Corp. (collectively, 'Apotex') provide this notice of certification letter" and that

"[p]ursuant to 21 C.F.R. § 314.52(c)(2), we advise you that the 505(b)(2) NDA submitted by Apotex has been assigned NDA No. 215033 by FDA."

8.     On information and belief, Apotex Inc. is in the business of, among other things, manufacturing, marketing, distributing, offering for sale, and selling generic products.  As a part of this business, on information and belief, Apotex Inc., acting in concert with Apotex Corp., files NDAs and Abbreviated NDAs ("ANDAs") with the FDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of drug products that are covered by United States patents.  On information and belief, as part of these NDAs and ANDAs, Apotex Inc., acting in concert with Apotex Corp., files Paragraph IV Certifications to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of drug products prior to the expiration of United States patents that cover such products.

9.     On information and belief, Apotex Inc. and Apotex Corp. are agents of each other, and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length, including with respect to the development, regulatory approval, marketing, sale, offer for sale, and distribution of pharmaceutical products throughout the United States, including in Delaware, and including with respect to the product described in NDA No. 215033.

10.     On information and belief, Apotex Inc. and Apotex Corp. contemplate that upon approval of NDA No. 215033, Apotex Inc. will manufacture the product described in NDA No. 215033, which Apotex Corp. will directly or indirectly market, sell, and distribute throughout the United States, including in Delaware.

11.     Upon information and belief, and consistent with their practice with respect to other drug products, following any FDA approval of NDA No. 215033, Apotex Inc. and Apotex Corp.

will act in concert to market, distribute, offer for sale, and sell the product described in NDA No. 215033 throughout the United States and within Delaware.

12.     On information and belief, following any FDA approval of NDA No. 215033, Apotex knows and intends that the product described in NDA No. 215033 will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

14.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b), at least because Apotex Inc. is a foreign corporation that is subject to personal jurisdiction in this Court, and Slayback and Apotex Corp. are incorporated in Delaware and therefore reside there for purposes of venue.

15.     Based on the facts and causes alleged herein, and for additional reasons to be further developed through discovery if necessary, this Court has personal jurisdiction over Slayback.

16.     This Court has personal jurisdiction over Slayback because, upon information and belief, Slayback is a company organized and existing under the laws of Delaware and maintains a registered agent for service of process in Delaware, at 1209 Orange Street, Wilmington, Delaware, 19801.  This Court has personal jurisdiction over Slayback for the additional reasons set forth below and for other reasons that will be presented to the Court if such jurisdiction is challenged.

17.     In addition, this Court has personal jurisdiction over Slayback because, on information and belief, Slayback has engaged in a persistent course of conduct within Delaware by continuously and systematically placing goods into the stream of commerce for distribution throughout the United States, including Delaware.

18.     Further, this Court also has personal jurisdiction over Slayback because, among other things, on information and belief: (1) Slayback has filed NDA No. 212209 for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the product described in NDA No. 212209 in the United States, including in Delaware; and (2) Slayback will market, distribute, offer for sale, and/or sell the product described in NDA No. 212209 in the United States, including in Delaware, upon approval of NDA No. 212209, and will derive substantial revenue from the use or consumption of the product described in NDA No. 212209 in the State of Delaware.  *See Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 763 (Fed. Cir. 2016).  On information and belief, if NDA No. 212209 is approved, the product described in NDA No. 212209 would, among other things, be marketed, distributed, offered for sale, and/or sold in Delaware, prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and/or used by patients in Delaware, all of which would have a substantial effect on Delaware.

19.     The Court also has personal jurisdiction over Slayback because it has committed, aided, abetted, induced, contributed to, or participated in the commission of the tortious act of patent infringement that has led and/or will lead to foreseeable harm and injury to Eagle, which is a Delaware corporation.

20.     Slayback has previously consented to jurisdiction in Delaware in one or more prior cases arising out of the filing of its drug applications, and it has asserted counterclaims in such cases.  *See, e.g.*, *Cephalon, Inc. & Eagle Pharm., Inc. v. Slayback Pharma LLC*, No. 17-01154-GMS, D.I. 11 (D. Del. Sep. 29, 2017); *Teva Pharma. Int'l GmbH, Cephalon, Inc. & Eagle Pharma., Inc. v. Slayback Pharma LLC*, No. 18-cv-00117, D.I. 9 (D. Del. Feb. 12, 2018); *Eagle*

*Pharm., Inc. v. Slayback Pharma LLC*, No. 18-01459-CFC, D.I. 9 (D. Del. Oct. 10, 2018); *Eagle Pharm., Inc. v. Slayback Pharma LLC*, No. 18-01953-CFC, D.I. 12 (D. Del. Jan. 3, 2019).

21.     For at least the above reasons, it would not be unfair or unreasonable for Slayback to litigate this action in this District, and there is personal jurisdiction over Slayback for purposes of this action.

22.     Based on the facts and causes alleged herein, and for additional reasons to be further developed through discovery if necessary, this Court has personal jurisdiction over Apotex.

23.     This Court has personal jurisdiction over Apotex Corp. because, on information and belief, Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, has registered to do business in the State of Delaware, and has appointed a registered agent in Delaware to accept service of process at 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, Delaware 19810.  Apotex Corp. has thus consented to jurisdiction in Delaware.

24.     In addition, this Court also has personal jurisdiction over Apotex Corp. and Apotex Inc. because, among other things, on information and belief: (1) Apotex Inc., acting in concert with Apotex Corp., has filed an NDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the product described in NDA No. 215033 in the United States, including in Delaware; and (2) Apotex Corp. and Apotex Inc., acting in concert and/or as agents of one another, will market, distribute, offer for sale, and/or sell the product described in NDA No. 215033 in the United States, including in Delaware, upon approval of NDA No. 215033, and will derive substantial revenue from the use or consumption of the product described in NDA No. 215033 in the State of Delaware.  *See Acorda Therapeutics Inc. v. Mylan Pharm. Inc*., 817 F.3d 755, 763 (Fed. Cir. 2016).  On information and belief, if NDA No. 215033 is approved, the product described in NDA No. 215033 would, among other things, be

marketed, distributed, offered for sale, and/or sold in Delaware, prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and/or used by patients in Delaware, all of which would have a substantial effect on Delaware.

25.     The Court also has personal jurisdiction over Apotex Corp. and Apotex Inc. because they have committed, aided, abetted, induced, contributed to, or participated in the commission of the tortious act of patent infringement that has led and/or will lead to foreseeable harm and injury to Eagle, a Delaware corporation.

26.     Apotex Inc. is subject to personal jurisdiction in Delaware because, among other things, Apotex Inc., itself and through its wholly-owned subsidiary Apotex Corp., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being hailed into court here.  Upon information and belief, Apotex Inc., itself and through its subsidiary Apotex Corp., develops, manufactures, imports, markets, offers to sell, and/or sells drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Eagle's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Apotex Inc. is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Apotex Corp. and therefore the activities of Apotex Corp. in this jurisdiction are attributed to Apotex Inc.  Further, Apotex Inc. is subject to personal jurisdiction in Delaware because, among other things, Apotex Inc., itself and through its wholly-owned subsidiary Apotex Corp., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being hailed into court here specifically with regard to NDA No. 215033.  In a notice letter provided to Eagle, those entities advised that "Apotex Inc. and Apotex Corp. (collectively, 'Apotex') provide this notice of certification letter" and that "[p]ursuant to 21

C.F.R. § 314.52(c)(2), we advise you that the 505(b)(2) NDA submitted by Apotex has been assigned NDA No. 215033 by FDA."

27.     Apotex Inc. and Apotex Corp. have consented to jurisdiction in Delaware in one or more prior cases arising out of the filing of their drug applications, and they have filed counterclaims in such cases.  *See, e.g.*, *Senju Pharm. Co. v. Apotex Inc. & Apotex Corp*., C.A. No. 12-00159-SLR, D.I. 9 (D. Del. Mar. 16, 2012); *Alcon Pharm. Ltd. v. Apotex Inc. & Apotex Corp*., C.A. No. 12-00960-SLR, D.I. 6 (D. Del. July 23, 2012); *Pfizer Inc. v. Apotex Inc. & Apotex Corp*., C.A. No. 12-00809-SLR, D.I. 18 (D. Del. Aug. 27, 2012); *UCB, Inc. v. Apotex Corp. & Apotex Inc*., C.A. No. 13-01209-LPS, D.I. 12 (D. Del. Sept. 9, 2013); *Pfizer Inc. v. Apotex Inc. & Apotex Corp.,* C.A. No. 13-01613-SLR, D.I. 8 (D. Del. Oct. 17, 2013); *Meda Pharm. Inc. v. Apotex Inc. & Apotex Corp*., C.A. No. 14-1453-LPS, D.I. 93 (D. Del. Mar. 9, 2016); *Salix Pharm., Inc. v. Apotex Inc. & Apotex Corp*., C.A. No. 15-00880-GMS, D.I. 15 (D. Del. Mar. 14, 2016); *Forest Labs., LLC v. Apotex Corp. & Apotex Inc*., C.A. No. 16-00269-GMS, D.I. 8 (D. Del. May 4, 2016); *Amgen Inc. v. Apotex Inc. & Apotex Corp*., C.A. No. 16-00926-GMS, D.I. 13 (D. Del. Nov. 15, 2016); *Astellas Pharma Inc. v. Apotex Inc. & Apotex Corp*., C.A. No. 16-00976-JFB, D.I. 17 (D. Del. Jan. 17, 2017); *Onyx Therapeutics, Inc. v. Apotex Inc. & Apotex Corp*., C.A. No. 16-01039-LPS, D.I. 14 (D. Del. Jan. 31, 2017); *Bristol-Myers Squibb Co. v. Apotex Inc. & Apotex Corp*., C.A. No. 17-00399-LPS, D.I. 8 (D. Del. May 4, 2017); *Bayer Healthcare LLC v. Apotex Inc. & Apotex Corp*., C.A. No. 17-00334-LPS, D.I. 10 (D. Del. May 22, 2017); *Teva Pharms. Int'l GmbH, et al. v. Apotex Inc. & Apotex Corp*., C.A. No. 17-01164-GMS, D.I. 17 (D. Del. Nov. 27, 2017); *Merck Sharp & Dohme Corp. v. Apotex Inc. & Apotex Corp*., C.A. No. 20-00749-RGA, D.I. 7 (D. Del. Jun. 26, 2020).

28.     Alternatively, this Court has jurisdiction over Apotex Inc. under Federal Rule of Civil Procedure 4(k)(2)(A) because: (a) Eagle's claims arise under federal law; (b) Apotex Inc. is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Apotex Inc. has sufficient contacts with the United States as a whole, not least through its development of drug products for sale in the United States, such that this Court's exercise of jurisdiction over Apotex Inc. satisfies due process.

29.     For the above reasons, it would not be unfair or unreasonable for Apotex to litigate this action in this District, and there is personal jurisdiction over Apotex here.

## BACKGROUND

30.     BELRAPZO®, which contains bendamustine hydrochloride, is an alkylating drug that is indicated for the treatment of patients with chronic lymphocytic leukemia, as well as for the treatment of patients with indolent B-cell non-Hodgkin lymphoma that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.

31.     Eagle is the holder of NDA No. 205580 for BELRAPZO®, which NDA has been approved by the FDA.

32.     The '483 patent, entitled "Formulations of Bendamustine" (Exhibit A hereto), was duly and legally issued on August 31, 2021.  Eagle is the owner and assignee of the '483 patent. Eagle has submitted the '483 patent to be listed in connection with BELRAPZO® in the FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations*, also known as the "Orange Book."

## INFRINGEMENT BY SLAYBACK

33.     By letter dated October 31, 2018 (the "Slayback Notice Letter"), Slayback notified Eagle pursuant to the Federal Food, Drug, and Cosmetic Act ("FDCA") that Slayback had

submitted to the FDA NDA No. 212209, seeking approval from the FDA to engage in the commercial manufacture, use, and/or sale of a Bendamustine Hydrochloride Injection, 100 mg/4 mL (25 mg/mL) product (multiple-dose vials) ("Slayback's NDA Product") prior to the expiration of U.S. Patent Nos. 9,265,831, 9,572,796, 9,572,797, and 10,010,533 ("Slayback Notice Letter Patents"), and therefore prior to the expiration of the '483 patent.

34.     The Slayback Notice Letter Patents are listed in the Orange Book for BELRAPZO®.  Eagle filed suit against Slayback for infringement of the Slayback Notice Letter Patents.  *Eagle Pharm., Inc. v. Slayback Pharma LLC*, No. 18-01953-CFC, D.I. 1 (D. Del. Dec. 11, 2018).

35.     Slayback previously conceded that Slayback's NDA Product meets all of the claim limitations of Claim 1 in U.S. Patent No. 9,572,796 ("the '796 patent"), except for the "pharmaceutically acceptable fluid" limitation.  *Eagle Pharm., Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1173 (Fed. Cir. 2020).  The '796 patent, which is representative of the Slayback Notice Letter Patents, is related to the '483 patent and shares the same specification.

36.     On information and belief, Slayback's NDA Product received tentative approval from the FDA on July 2, 2020.  *See* https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/212209Orig1s000TAltr.pdf (last visited August 31, 2021).

37.     Upon information and belief, Slayback's NDA Product relies on data from bioavailability and/or bioequivalence studies contained in the approved labeling for BELRAPZO®.  BELRAPZO® is approved for a 24-month shelf life.  Slayback's Notice Letter does not identify any difference in stability between Slayback's NDA Product and BELRAPZO® and, upon information and belief, Slayback's NDA Product has the same or substantially similar stability as BELRAPZO® and/or as recited in the claims of the '483 patent.

38.     On information and belief, the purpose of Slayback's submission of NDA No. 212209 was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Slayback's NDA Product prior to the expiration of the '483 patent.

39.     In the Slayback Notice Letter, Slayback stated that the active ingredient of Slayback's NDA Product is bendamustine hydrochloride.  *See also Eagle Pharm., Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1173 (Fed. Cir. 2020).

40.     In the Slayback Notice Letter, Slayback stated that the proposed dosage strength of Slayback's NDA Product is 25 mg/mL.

41.     Upon information and belief, Slayback's NDA Product contains polyethylene glycol, and a stabilizing amount of an antioxidant.  *See also Eagle Pharm*., 958 F.3d at 1173.

42.     Upon information and belief, Slayback's NDA Product is a ready to use liquid bendamustine-containing composition.  *See also id*.

43.     Upon information and belief, Slayback's NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC at a wavelength of 223 nm after at least 15 months at a temperature of from about 5 °C to about 25 °C.  *See also id*.

44.     Upon information and belief, the proposed labeling for Slayback's NDA Product encourages, recommends, instructs, and/or promotes administration of a bendamustine-containing composition to patients with chronic lymphocytic leukemia and indolent B-cell non-Hodgkin lymphoma, which are types of cancer.

## <u>INFRINGEMENT BY APOTEX</u>

45.     By letter dated August 16, 2021 (the "Apotex Notice Letter"), Apotex notified Eagle pursuant to the FDCA that Apotex had submitted to the FDA NDA No. 215033, seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of bendamustine hydrochloride injection, 25 mg/mL (4 mL) ("Apotex's NDA Product") prior to the expiration of U.S. Patent Nos. 8,609,707, 8,791,270, 9,265,831, 9,572,796, 9,572,797, and 10,010,533 ("the Apotex Notice Letter Patents"), and therefore prior to the expiration of the '483 patent.  The Apotex Notice Letter Patents are listed in the Orange Book for BELRAPZO®.

46.     Upon information and belief, Apotex's NDA Product relies on data from bioavailability and/or bioequivalence studies contained in the approved labeling for BELRAPZO®.  BELRAPZO® is approved for a 24-month shelf life.  Apotex's Notice Letter does not identify any difference in stability between Apotex's NDA Product and BELRAPZO® and, upon information and belief, Apotex's NDA Product has the same or substantially similar stability as BELRAPZO® and/or as recited in the claims of the '483 patent.

47.     On information and belief, the purpose of Apotex Inc.'s submission of NDA No. 215033 was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Apotex's NDA Product prior to the expiration of the '483 patent.

48.     In the Apotex Notice Letter, Apotex stated that the active ingredient in Apotex's NDA Product is bendamustine hydrochloride.

49.     In the Apotex Notice Letter, Apotex stated that the proposed dosage strength of Apotex's NDA Product is 25 mg/mL (4 mL).

50.     Upon information and belief, Apotex's NDA Product contains polyethylene glycol, and a stabilizing amount of an antioxidant.  Apotex's Notice Letter does not dispute that Apotex's NDA Product contains polyethylene glycol or a stabilizing amount of an antioxidant.

51.     Upon information and belief, Apotex's NDA Product is a ready to use liquid bendamustine-containing composition.

52.     Upon information and belief, Apotex's NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC at a wavelength of 223 nm after at least 15 months at a temperature of from about 5 °C to about 25 °C.

53.     Upon information and belief, the proposed labeling for Apotex's NDA Product recommends, instructs, and/or promotes administration of a bendamustine-containing composition to patients with chronic lymphocytic leukemia and indolent B-cell non-Hodgkin lymphoma, which are types of cancer.

## COUNT I – INFRINGEMENT BY SLAYBACK OF U.S. PATENT NO. 11,103,483 UNDER 35 U.S.C. § 271(e)(2)

54.     Eagle incorporates each of the preceding paragraphs as if fully set forth herein.

55.     Slayback's submission of NDA No. 212209 for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Slayback's NDA Product prior to the expiration of the '483 patent, was an act of infringement of the '483 patent under 35 U.S.C. § 271(e)(2)(A).

56.     Upon information and belief, the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Slayback's NDA Product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8, either literally and/or under the doctrine of equivalents.

57.     Upon information and belief, Slayback will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Slayback's NDA Product with its proposed labeling upon FDA approval of NDA No. 212209.

58.     Upon information and belief, the use of Slayback's NDA Product in accordance with and as directed by Slayback's proposed labeling for that product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8.

59.     Upon information and belief, Slayback plans and intends to, and will, actively induce infringement of the '483 patent when NDA No. 212209 is approved, and plans and intends to, and will, do so after approval.

60.     Upon information and belief, Slayback knows that its NDA Product and its proposed labeling are especially made or adapted for use in infringing the '483 patent, and that its NDA Product and its proposed labeling are not suitable for substantial noninfringing use.  Upon information and belief, Slayback plans and intends to, and will, contribute to infringement of the '483 patent after approval of NDA No. 212209.

61.     The foregoing actions by Slayback constitute and/or will constitute infringement of the '483 patent, active inducement of infringement of the '483 patent, and contribution to the infringement by others of the '483 patent.

62.     Upon information and belief, Slayback has acted with full knowledge of the '483 patent and/or the application leading to the '483 patent, Application No. 16/509,920, and without a reasonable basis for believing that it would not be liable for infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent.

63.     Unless Slayback is enjoined from infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent, Eagle will suffer irreparable injury. Eagle has no adequate remedy at law.

## COUNT II – INFRINGEMENT BY APOTEX OF U.S. PATENT NO. 11,103,483 UNDER 35 U.S.C. § 271(e)(2)

64.     Eagle incorporates each of the preceding paragraphs as if fully set forth herein.

65.     Apotex Inc.'s submission of NDA No. 215033 for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Apotex's NDA Product prior to the expiration of the '483 patent, was an act of infringement of the '483 patent under 35 U.S.C. § 271(e)(2)(A).

66.     Upon information and belief, the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Apotex's NDA Product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8, either literally and/or under the doctrine of equivalents.

67.     Upon information and belief, Apotex will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Apotex's NDA Product with its proposed labeling upon FDA approval of NDA No. 215033.

68.     Upon information and belief, the use of Apotex's NDA Product in accordance with and as directed by Apotex's proposed labeling for that product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8.

69.     Upon information and belief, Apotex plans and intends to, and will, actively induce infringement of the '483 patent when NDA No. 215033 is approved, and plans and intends to, and will, do so after approval.

70.     Upon information and belief, Apotex knows that its NDA Product and its proposed labeling are especially made or adapted for use in infringing the '483 patent, and that its NDA Product and its proposed labeling are not suitable for substantial noninfringing use.   Upon information and belief, Apotex plans and intends to, and will, contribute to infringement of the '483 patent after approval of NDA No. 215033.

71.     The foregoing actions by Apotex constitute and/or will constitute infringement of the '483 patent, active inducement of infringement of the '483 patent, and contribution to the infringement by others of the '483 patent.

72.     Upon information and belief, Apotex has acted with full knowledge of the '483 patent and/or the application leading to the '483 patent, Application No. 16/509,920, and without a reasonable basis for believing that it would not be liable for infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent.

73.     Unless Apotex is enjoined from infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent, Eagle will suffer irreparable injury.  Eagle has no adequate remedy at law.

### COUNT III – DECLARATORY JUDGMENT OF INFRINGEMENT BY SLAYBACK OF U.S. PATENT NO. 11,103,483

74.     Eagle incorporates each of the preceding paragraphs as if fully set forth herein.

75.     Upon information and belief, Slayback has knowledge of the '483 patent and/or the application leading to the '483 patent, Application No. 16/509,920.

76.     Upon information and belief, the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Slayback's NDA Product would infringe one or more claims of

the '483 patent, including but not limited to claims 1 and 8, either literally or under the doctrine of equivalents.

77.    Upon information and belief, Slayback will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Slayback's NDA Product with its proposed labeling upon FDA approval of NDA No. 212209.

78.    Upon information and belief, the use of Slayback's NDA Product in accordance with and as directed by Slayback's proposed labeling for that product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8.

79.    Upon information and belief, Slayback plans and intends to, and will, actively induce infringement of the '483 patent when NDA No. 212209 is approved, and plans and intends to, and will, do so after approval.

80.    Upon information and belief, Slayback knows that its NDA Product and its proposed labeling are especially made or adapted for use in infringing the '483 patent, and that its NDA Product and its proposed labeling are not suitable for substantial noninfringing use.  Upon information and belief, Slayback plans and intends to, and will, contribute to infringement of the '483 patent after approval of NDA No. 212209.

81.    The foregoing actions by Slayback constitute and/or will constitute infringement of the '483 patent, active inducement of infringement of the '483 patent, and contribution to the infringement by others of the '483 patent.

82.    Upon information and belief, Slayback has acted without a reasonable basis for believing that it would not be liable for infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent.

83.     Accordingly, there is a real, substantial, and continuing case or controversy between Eagle and Slayback regarding whether Slayback's manufacture, use, sale, offer for sale, or importation into the United States of Slayback's NDA Product with its proposed labeling according to NDA No. 212209 will infringe one or more claims of the '483 patent.

84.     Eagle should be granted a declaratory judgment that the making, using, sale, offer for sale, and importation into the United States of Slayback's NDA Product with its proposed labeling would infringe, actively induce the infringement of, and contribute to the infringement by others of the '483 patent.

85.     Slayback should be enjoined from infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent; otherwise Eagle will suffer irreparable injury.  Eagle has no adequate remedy at law.

## COUNT IV – DECLARATORY JUDGMENT OF INFRINGEMENT BY APOTEX OF U.S. PATENT NO. 11,103,483

86.     Eagle incorporates each of the preceding paragraphs as if fully set forth herein.

87.     Upon information and belief, Apotex has knowledge of the '483 patent and/or the application leading to the '483 patent, Application No. 16/509,920.

88.     Upon information and belief, the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Apotex's NDA Product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8, either literally or under the doctrine of equivalents.

89.     Upon information and belief, Apotex will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Apotex's NDA Product with its proposed labeling upon FDA approval of NDA No. 215033.

90.     Upon information and belief, the use of Apotex's NDA Product in accordance with and as directed by Apotex's proposed labeling for that product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8.

91.     Upon information and belief, Apotex plans and intends to, and will, actively induce infringement of the '483 patent when NDA No. 215033 is approved, and plans and intends to, and will, do so after approval.

92.     Upon information and belief, Apotex knows that its NDA Product and its proposed labeling are especially made or adapted for use in infringing the '483 patent, and that its NDA Product and its proposed labeling are not suitable for substantial noninfringing use.   Upon information and belief, Apotex plans and intends to, and will, contribute to infringement of the '483 patent after approval of NDA No. 215033.

93.     The foregoing actions by Apotex constitute and/or will constitute infringement of the '483 patent, active inducement of infringement of the '483 patent, and contribution to the infringement by others of the '483 patent.

94.     Upon information and belief, Apotex has acted without a reasonable basis for believing that it would not be liable for infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent.

95.     Accordingly, there is a real, substantial, and continuing case or controversy between Eagle and Apotex regarding whether Apotex's manufacture, use, sale, offer for sale, or importation into the United States of Apotex's NDA Product with its proposed labeling according to NDA No. 215033 will infringe one or more claims of the '483 patent.

96.     Eagle should be granted a declaratory judgment that the making, using, sale, offer for sale, and importation into the United States of Apotex's NDA Product with its proposed

labeling would infringe, actively induce the infringement of, and contribute to the infringement by others of the '483 patent.

97.    Apotex should be enjoined from infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent; otherwise Eagle will suffer irreparable injury. Eagle has no adequate remedy at law.

WHEREFORE, Eagle requests the following relief:

(a)    A judgment that Slayback has infringed, will infringe, and will induce and contribute to infringement of the '483 patent;

(b)    A judgment that Apotex has infringed, will infringe, and will induce and contribute to infringement of the '483 patent;

(c)    A judgment pursuant to, *inter alia*, 35 U.S.C. § 271(e)(4)(A) ordering that the effective date of any FDA approval for Slayback to make, use, offer for sale, sell, market, distribute, or import Slayback's NDA Product, or any product or compound the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, be not earlier than the expiration date of the '483 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(d)    A judgment pursuant to, *inter alia*, 35 U.S.C. § 271(e)(4)(A) ordering that the effective date of any FDA approval for Apotex to make, use, offer for sale, sell, market, distribute, or import Apotex's NDA Product, or any product or compound the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, be not earlier than the expiration date of the '483 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(e)     A preliminary and permanent injunction pursuant to, *inter alia*, 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283 enjoining Slayback, its officers, agents, servants, employees and attorneys, and all persons acting in concert with them, from making, using, selling, offering for sale, marketing, distributing, or importing Slayback's NDA Product, or any product the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, or the inducement of or the contribution to any of the foregoing, prior to the expiration date of the '483 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(f)     A preliminary and permanent injunction pursuant to, *inter alia*, 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283 enjoining Apotex, their officers, agents, servants, employees and attorneys, and all persons acting in concert with them, from making, using, selling, offering for sale, marketing, distributing, or importing Apotex's NDA Product, or any product the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, or the inducement of or the contribution to any of the foregoing, prior to the expiration date of the '483 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(g)     A judgment declaring that making, using, selling, offering for sale, marketing, distributing, or importing Slayback's NDA Product, or any product or compound the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, prior to the expiration date of the '483 patent, respectively, will infringe, actively induce infringement of, and/or contribute to the infringement by others of the '483 patent;

(h)     A judgment declaring that making, using, selling, offering for sale, marketing, distributing, or importing Apotex's NDA Product, or any product or compound the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent,

prior to the expiration date of the '483 patent, respectively, will infringe, actively induce infringement of, and/or contribute to the infringement by others of the '483 patent;

(i)     An award of Eagle's damages or other monetary relief to compensate Eagle if Slayback engages in the manufacture, use, offer for sale, sale, marketing, distribution, or importation of Slayback's NDA Product, or any product the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, or the inducement of or the contribution to any of the foregoing, prior to the expiration date of the '483 patent, inclusive of any extension(s) and additional period(s) of exclusivity, in accordance with 35 U.S.C. § 271(e)(4)(C);

(j)     An award of Eagle's damages or other monetary relief to compensate Eagle if Apotex engages in the manufacture, use, offer for sale, sale, marketing, distribution, or importation of Apotex's NDA Product, or any product the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the '483 patent, or the inducement of or the contribution to any of the foregoing, prior to the expiration date of the '483 patent, inclusive of any extension(s) and additional period(s) of exclusivity, in accordance with 35 U.S.C. § 271(e)(4)(C);

(k)     A declaration that this case is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(l)     An award of Eagle's costs and expenses in this action; and

(m)     Such further and other relief as this Court may deem just and proper.

SHAW KELLER LLP

/s/ Karen E. Keller
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

*Attorneys for Eagle Pharmaceuticals, Inc.*

OF COUNSEL:
Daniel G. Brown
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Kenneth G. Schuler
Marc N. Zubick
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Dated:  August 31, 2021